**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHARLES E. BRAMLETT, K91341,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 11-97-GPM** |
| | ) | |
| **BIG MUDDY RIVER CORRECTIONAL CENTER, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Charles E. Bramlett, who is confined in the Big Muddy River Correctional Center after having been adjudicated a Sexually Dangerous Person, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.–** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.–** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

[1] Civilly committed sex offenders in Illinois are subject to the PLRA (28 U.S.C. § 1915 *et seq*). *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004). Persons civilly committed under the Sexually Dangerous Persons Act are deemed to be pretrial detainees, not convicted prisoners. *See Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Plaintiff outlines four distinct incidents in which he claims his civil rights were violated. First, on approximately May 20, 2008, Defendant Carich, the administrator of the Sexually Dangerous Persons (SDP) treatment program, ordered Plaintiff to be placed in a cell with Inmate Shivers. Shivers had previously threatened to fight Plaintiff. At some point, Plaintiff refused to remain in the cell with Shivers. As a result, disciplinary charges were filed against Plaintiff, and Plaintiff was placed in segregation. A review of Plaintiff's Exhibits A through C (Doc. 1-1, p. 1-10) shows that Plaintiff was to have been released from segregation and placed back with Shivers, but Plaintiff refused to go back on at least three occasions during June, 2008. This resulted in additional disciplinary charges. Plaintiff

sought protective custody from Defendant Shular (of Internal Affairs), but learned that this was not available for SDP inmates. Plaintiff's grievance over the discipline was denied by the Administrative Review Board (ARB) on January 20, 2009 (Doc. 1-1, p. 7).

A similar incident ensued in October 2008, after Defendant Carich placed Plaintiff in a cell with inmate Blake. Plaintiff and Blake had a history of conflict over Blake's sexual harassment of Plaintiff, which Plaintiff had reported to prison officials. Plaintiff believed that this report led to Blake's threats to fight Plaintiff. On a day when Blake made a specific threat to fight Plaintiff, Plaintiff reported this threat to a wing officer, Defendant Gwartney.[2] However, Defendant Gwartney wrote up Plaintiff for threatening Blake and took Plaintiff to segregation (Doc. 1, p. 5). A disciplinary ticket was issued to Plaintiff for threats and intimidation, and he was given one month in segregation after a hearing (Doc. 1-1, p. 11-15). Plaintiff claims the Adjustment Committee, Grievance Officers, Administrative Review Board, and the Illinois Department of Corrections (IDOC) Director all refused to consider Plaintiff's statement in his defense, and refused to hear his witnesses (Doc. 1, p. 5).

The third incident occurred on August 1, 2009, when Defendant John Doe Gate Guard refused to allow Plaintiff's two sisters to visit him, despite the fact they had been on Plaintiff's approved visitor list since April 26, 2001. Plaintiff states that Defendant John Doe Gate Guard did not have a copy of his visitor list. Plaintiff's mother was allowed in.

---

[2] Although Plaintiff does not include Officer Gwartney in his list of named Defendants in Section I. D. of his complaint, it appears that he intended to include those officials named in the body of his complaint as Defendants as well (Doc. 1, p. 2). Under the "additional defendants" section, he states: "All IDOC/BMRCC state employees who served at different times and capacities since June 2008-2010 – also stated in statement of claims." While the Court does not condone this approach to the identification of Defendants, in keeping with our duty to liberally construe a *pro se* complaint, the Court will evaluate Plaintiff's claims against Defendant Gwartney and other Defendants identified in the body of the complaint by name or specific description provided that Plaintiff correctly identifies remaining Defendants in the caption of all future filings.

Finally, on approximately January 8, 2010, Defendant Butler searched through Plaintiff's stored legal boxes outside Plaintiff's presence and without Plaintiff's consent. Defendant Butler removed about two thirds of the items after concluding they were not true legal materials. Defendant Butler instructed Plaintiff to send the items home the same day or they would be destroyed, adding that if he did not have the money on the books to ship the material, Plaintiff would receive a disciplinary ticket. Plaintiff paid to have the property shipped. He filed a grievance over this action, which was rejected. Plaintiff's witnesses to the incident were never heard during the grievance process.

In addition to compensatory damages, Plaintiff requests injunctive relief, including release from confinement in the SDP program.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into four (4) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Failure to Protect**

Persons civilly committed under the Sexually Dangerous Persons Act (725 ILL. COMP. STAT. 205/0.01 *et seq.*) are deemed to be pretrial detainees, not convicted prisoners. *See Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003). Generally, confinement of pretrial detainees may not be punitive, because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, conditions of pretrial confinement must be "reasonably related to a legitimate governmental objective." *Id.* at 539. *See also Murphy v. Walker*, 51 F.3d 714, 717-18 (7th Cir. 1995); *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991). Although claims brought pursuant to § 1983, when involving detainees, arise under the

Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n. 2 (7th Cir. 1999)).

Corrections officials have a duty to protect pretrial detainees from violence caused by other inmates. *See Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). However, liability for an injury attaches only where the officer was aware that the detainee faced "a substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). Thus, to prevail on a claim for failure to protect, Plaintiff must show that he was at risk of harm and that the Defendants knew about this risk and disregarded it. In other words, Plaintiff must show that Defendants were deliberately indifferent to his plight. *See Farmer*, 511 U.S. at 834; *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). In order to recover damages, a plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Where a plaintiff has been the victim of an attack, the defendants had to know that there was a substantial risk that those who attacked the plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889, *citing Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985).

In Plaintiff's case, he communicated to Defendant Carich and Defendant Gwartney the specific threats made by both of his cellmates. However, Defendant Carich refused to change the housing

assignments. Furthermore, Plaintiff alleges he was told by Defendant Shular, of Internal Affairs, that no protective custody was available to inmates in the SDP program. Had either inmate subsequently attacked Plaintiff, his claim for failure to protect would merit further review. However, Plaintiff never suffered actual physical harm, because Plaintiff was placed in segregation on disciplinary charges and in that manner was removed from Shivers and Blake.

Although no compensatory damages are available in the absence of physical injury, the Supreme Court has recognized that an inmate may seek injunctive relief to prevent future harm. *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) ("a remedy for unsafe conditions need not await a tragic event"); *see also Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001). At the pleadings stage, Plaintiff has sufficiently alleged both that he faced an objective risk of serious harm, and that Defendants were subjectively aware of the risk but failed to take steps to mitigate the risk.

In order to ultimately obtain permanent injunctive relief, a party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest. *Old Republic Ins. Co. v. Emp'rs Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n. 12 (1987).

Plaintiff has described circumstances – the placement, despite Plaintiff's protests, in a cell with another inmate who had threatened him with physical harm – that may recur. He has made a general request for injunctive relief. He has identified Defendant Carich, the director of the SDP program, as the individual who made the cell placement decisions and allegedly refused to consider Plaintiff's reports of the threats made to him. In addition, Defendant Shular, of Internal Affairs, appears to be

responsible for protective custody decisions. Although Plaintiff has failed to state a claim for damages for failure to protect him from inmates who pose a threat, it would be inappropriate to dismiss Plaintiff's claim for injunctive relief at this stage of the litigation. Accordingly, the claim for injunctive relief against Defendants Carich and Shular shall receive further review.

**Count 2 - Denial of Grievances and False Disciplinary Charge**

When Plaintiff protested the plan to place him back in the cell with Shivers in May and June 2008, he was disciplined for refusing housing. Later, in October 2008, when Plaintiff was housed with Blake, he reported Blake's threat against him to Defendant Gwartney in an attempt to be moved away from Blake. However, Defendants charged Plaintiff with threatening Blake, a charge Plaintiff asserts was false. In both instances, Plaintiff was given one month in segregation, along with a demotion to C-grade, and gym/yard restrictions.

Plaintiff complains not only about the imposition of discipline on him as a result of these charges, but claims that both times, his witnesses were not allowed to testify at his hearings. Further, he asserts that the Adjustment Committee (Defendants Venture, Jackson, Sanders, and Winsor), Grievance Officers (Defendants Winsor and Sanders), Defendant Administrative Review Board, and the former Directors of the Illinois Department of Corrections (IDOC) (Defendants Randle, Taylor, and Walker), all refused to consider his defenses and witnesses, and wrongly denied his grievances filed as a result of the disciplinary charges.

Initially, a word about some of these Defendants is in order. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states or their agencies in federal court for

money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990). Plaintiff therefore cannot maintain an action against Defendant IDOC nor any of its former Directors: Defendants Taylor, Walker, and Randle. Likewise, Defendant Administrative Review Board and Defendant Big Muddy Correctional Center, both being divisions of the IDOC, are state agencies and thus are not subject to a § 1983 suit. *Will*, 491 U.S. at 71; *see also Toledo, Peoria, & W.R. Co. v. Ill. Dep't of Transp.*, 744 F.2d 1296, 1298-99 (7th Cir. 1984). Defendants Taylor, Walker, Randle, Administrative Review Board, and Big Muddy Correctional Center, shall thus be dismissed with prejudice.

**A. Denial of Grievances**

There is no constitutional violation where a prisoner has access to a grievance procedure and obtains review, as Plaintiff did here. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Moreover, Plaintiff has no constitutional right to have a grievance resolved in his favor. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired). Therefore, Plaintiff has failed to state a claim upon which relief may be granted for the denial of his grievances.

**B. False Disciplinary Charge**

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused by Defendant Gwartney of threatening his cellmate, which resulted in Plaintiff being placed in segregation for one month along with other sanctions. Plaintiff was given a hearing on the charge, but claims that he was not allowed to call witnesses, which is one of the procedural protections described in *Wolff*. The complaint does not indicate whether the witnesses were refused due to security concerns or some other reason.

If Plaintiff's hearing was properly conducted before he was found guilty of the false charge, he would not have a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Plaintiff's Exhibit D includes the statement by Defendant Gwartney that Plaintiff told him, "If I go back on the wing I'm gonna fight my cellie" (Doc. 1-1, p. 13). This information would qualify as "some evidence" supporting the hearing board's decision to discipline Plaintiff.

Even if during Plaintiff's hearing he was not afforded all of the procedural protections in *Wolff*, he still may not have an actionable claim. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court of the United States rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." *Id*. at 484. Furthermore, the Supreme Court held that while a state could create a liberty interest protected by the Due Process Clause, such interests were limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate in relation to the ordinary incidents of prison life - especially totally discretionary types of confinement such as administrative segregation and protective custody. *Id*. at 486.

In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.* at 1176.

This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest – under either the Due Process Clause or state law – so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. Subsequent opinions by the Seventh Circuit have explained that where the duration of confinement in segregation is relatively short, no liberty interest will be implicated. *See Marion v.*

*Columbia Corr. Inst.*, 559 F.3d 693, 697 n.2 (7th Cir. 2009) (collecting cases).

Nothing in Plaintiff's complaint or exhibits suggests that the conditions he had to endure because of being found guilty of the allegedly false conduct violation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Nor does the duration (one month) of Plaintiff's time in segregation trigger due process concerns. Accordingly, Plaintiff has failed to allege facts indicating that he was deprived of a liberty interest, either under the Due Process Clause or created by the State, and dismissal is in order.

In summary, the claims in Count 2 against Defendants Gwartney, Venture, Jackson, Sanders, Winsor, Randle, Taylor, Walker, Administrative Review Board, Illinois Department of Corrections, and Big Muddy Correctional Center, shall all be dismissed with prejudice.

**Count 3 - Visitation Denial**

Plaintiff next complains that his right to visitation with his family members was violated when Defendant John Doe Gate Guard ("Defendant Guard") turned away his two sisters on August 1, 2009, despite the fact they had been on his list of approved visitors for many years. Plaintiff states that Defendant Guard did not have a copy of his visitor list, and this was the reason the sisters were denied entrance.

Prisoners do not have a fundamental right to visitation arising directly from the Constitution. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989). States routinely promulgate regulations as to who may be allowed to visit prison inmates, and when such regulations restrict prisoners' constitutional rights, courts review them in light of whether the regulation is reasonably related to legitimate penological interests. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("freedom of association is among the rights least compatible with incarceration . . . . [s]ome curtailment of that freedom must be

expected in the prison context"); *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Here, Plaintiff is not challenging the regulations governing which individuals may be approved for placement on an inmate's visitor list. Instead, he takes issue with a single incident when his visitors were denied entrance. As he describes it, his sisters were turned away by Defendant Guard because Plaintiff's approved visitor list was not available at the gate as it apparently should have been. Thus, any violation of Plaintiff's rights came about through negligence, mistake, or inadvertence. A defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). Plaintiff also complains that his grievance over the exclusion of his visitors was never answered. For the reasons stated in Count 2 A above, this failure does not give rise to any constitutional claim. Accordingly, this portion of Plaintiff's claim shall be dismissed with prejudice.

**Count 4 - Search and Removal of Legal Property**

Fnally, Plaintiff takes issue with Defendant Butler's search of Plaintiff's legal storage boxes, which was conducted outside of Plaintiff's presence and without his permission. Plaintiff also complains about the resulting order that items from his legal boxes deemed not to be legitimate legal material must be shipped home at Plaintiff's expense, or they would be destroyed (Doc. 1-1, p. 18-21). Plaintiff's grievance over this incident was denied.

The initial question is whether any privacy right was violated when Plaintiff's legal materials were searched without his consent. It is well established that a prisoner has no expectation of privacy in his prison cell:

> [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell . . . , accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the

> confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984). The Court presumes that Plaintiff's "excess" legal property boxes contained materials that would have been in Plaintiff's cell, had there been space to keep them there. Thus, the legal property boxes may be considered to be an "extension" of Plaintiff's prison cell, and as such, he has no more expectation of privacy in the boxes or their contents than he would have if the search of the boxes had taken place in Plaintiff's cell.

The possibility that Plaintiff's legal property boxes contained privileged attorney-client correspondence raises the concern that the search may implicate Plaintiff's access to the courts. *See Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir.1993) (opening legal mail outside inmate's presence may violate inmate's rights). However, Plaintiff has not alleged any actual injury arising from the search. *See Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). He does not claim that his access to the courts was impaired in any way, nor does he claim that Defendant Butler read any privileged correspondence. Therefore, Plaintiff has not stated a claim for denial of access to the courts.

Plaintiff implies that the prison's practice or policy was to have the inmate present during the search of his legal property boxes. Indeed, Defendant Butler asserted this is what took place, contrary to Plaintiff's version of events. However, even if prison staff failed to follow their own policy, a federal court is not the enforcer of state law or regulations. *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *see also Vruno v. Schwarzwalder*, 600 F.2d 124, 130-31 (8th Cir. 1979) ("The simple fact that state law prescribes certain procedures does not mean that the

procedures thereby acquire a federal constitutional dimension.”). Thus, the search did not violate Plaintiff’s constitutional rights.

Turning to the removal of Plaintiff’s property from the legal storage boxes–his property items were not destroyed, but were shipped home at Plaintiff’s expense, which amounted to $20.05. Plaintiff sought the return of these funds, but his grievance was unsuccessful. The only property of which Plaintiff was deprived was the money he was required to spend for shipping to avoid the destruction of the material that had been in the legal storage boxes.

The only constitutional right that might be implicated by Plaintiff’s allegations is his right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson*, 468 U.S. at 530-36 (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). For this reason, and because Plaintiff had access to a grievance process (see above), he does not state a constitutional claim for the denial of this grievance.

Plaintiff has not stated any constitutional claim regarding either the search of his legal property boxes oor the order to expend funds to ship his property out of the prison to avoid its destruction. Accordingly, Count 4 shall be dismissed with prejudice.

**Defendant Evans**

Plaintiff lists Defendant John Evans, Warden of Big Muddy Correctional Center, in the caption of his complaint. However, the statement of claim does not include any allegations against Defendant Evans. "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). *See also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene). As Plaintiff has failed to state a claim against Defendant Evans, he shall be dismissed from this action with prejudice.

**Release from Confinement as a Sexually Dangerous Person**

Plaintiff seeks to be released from confinement as one of his alternative requests for relief. However, release is not one of the available remedies in a civil rights action. A petition for a writ of habeas corpus is the proper action "[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody-whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation." *Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir. 1991). Additionally, a person committed under the Illinois Sexually Dangerous Persons Act, 725 Illinois Compiled Statutes 205/0.01 *et seq*., may seek release from the state court where the person was committed. Thus, a § 1983 claim brought in federal court is not the correct avenue for Plaintiff to take in order to gain his release.

**Pending Motions**

Plaintiff's Motion for Status Report (Doc. 10), filed August 23, 2011, is **DENIED AS MOOT**.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS TWO, THREE,** and **FOUR** fail to state a claim upon which relief may be granted, and thus are **DISMISSED with prejudice.**

Defendants **BIG MUDDY RIVER CORRECTIONAL CENTER, ILLINOIS DEPARTMENT OF CORRECTIONS, BUTLER, TAYLOR, WALKER, RANDLE, EVANS, VENTURE, JACKSON, SANDERS, WINSOR, ADMINISTRATIVE REVIEW BOARD, GWARTNEY,** and **JOHN DOE GATE GUARD** are **DISMISSED** from this action **with prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **CARICH** and **SHULAR** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. This entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: October 14, 2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge