IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES E. BRAMLETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-97-GPM-DGW |
| ) | |
| LT. SCHULAR and MARK S. CARICH, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

### REPORT AND RECOMMENDATIONS

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the question whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections (IDOC) prior to filing this lawsuit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a).  It is **RECOMMENDED** that the Court **FIND** that Plaintiff did exhaust his administrative remedies as to Defendant Carich prior to filing suit, but not as to Defendant Schular; that the Motion for Summary Judgment filed by defendants (Doc. 31) be **GRANTED in part and DENIED in part**; and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Charles Bramlett filed his complaint in the action on February 3, 2011, alleging that various officials at Big Muddy Correctional Center violated his civil rights by placing him

with dangerous cellmates, filing false disciplinary charges against him, denying his family members visitation, and improperly searching his legal property. Upon threshold review, the Court allowed Bramlett to proceed on his claim for injunctive relief against Defendants Schuler and Carich seeking to prevent future cell placement with inmates who had threatened to cause him harm. All other defendants and all claims for damages for constitutional violations were dismissed from the action (Doc. 11).

Defendants Schuler and Carich filed a motion for summary judgment on April 30, 2012 (Doc. 31), arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Gina Allen, Chairperson of the ARB identified two grievances filed by Plaintiff relevant to the claim.[1]

*Grievance Filed July 10, 2008*

On July 10, 2008, Plaintiff filed a grievance challenging a disciplinary report filed against him for refusing housing on June 16, 2008 (Doc. 32-1, pp. 7-8). Plaintiff explained that he refused the housing assignment made by Defendant Carich, administrator of the Sexually Dangerous Persons (SDP) program, because his newly-assigned cellmate, Roy Shivers, had previously threatened and "provoked" him to fight him. Plaintiff stated that he willingly accepted the disciplinary action of nine days in segregation for his own self-protection. He asked, however, that "this not be a disciplinary action against me," because he was concerned about the negative effect a disciplinary action would have on his potential for release. He asked that he be placed in "protective custody" or "investigative status" rather than segregation resulting from a disciplinary action. Grievance Officer Angela Winsor denied the grievance on August 25, 2008;

---

[1] Both of Plaintiff's grievances were "fully exhausted" in the sense that Plaintiff properly filed the grievances at each step of the administrative review process.

2

CAO John Evans concurred in the denial on August 27, 2008 (Doc. 32-1, p. 6). Plaintiff appealed the grievance to the ARB, which affirmed the denial of the grievance on January 20, 2009, finding "this office is reasonably satisfied the offender committed the offenses" charged in the disciplinary report (Doc. 32-1, p. 5).

*Grievance Filed November 11, 2008*

On October 21, 2008, Plaintiff received a ticket for intimidation and threats because he told Corrections Officer Gwaltney that he would fight his cellmate if he was required to return to his cell. Plaintiff was found guilty of the charge and was disciplined with one-month confinement in segregation. On November 11, 2008, Plaintiff filed a grievance challenging the disciplinary report (Doc. 32-1, pp. 14-16). He stated that Defendant Carich placed him in a dangerous celling assignment because his cellmate, Randall Blake, had threatened to fight and assault him. Thus, Plaintiff was trying to protect himself from assault by asking Officer Gwaltney to take him to segregation. Plaintiff specifically objected that the adjustment committee did not call his witnesses. He requested that his witnesses be interviewed and the disciplinary report expunged. He requested that he be placed with a specific inmate, and asked that Dr. Carich "stop setting me up in these bogus celling arrangements." The grievance officer recommended denial of the grievance on December 2, 2008. The CAO concurred on December 5, 2008 (Doc. 32-1, p. 13). Plaintiff appealed the grievance to the ARB, which found on April 13, 2009, no due process irregularities in the disciplinary proceedings (Doc. 32-1, p. 12).

*Motion for Summary Judgment (Doc. 31)*

On April 30, 2012, Defendants Carich and Schular filed a Motion for Summary Judgment arguing that Plaintiff did not properly exhaust administrative remedies against either Defendant

Carich or Defendant Schuler.  Specifically, they argue that Plaintiff's grievances were insufficient to exhaust administrative remedies against Dr. Carich because the two exhausted grievances challenged disciplinary reports, not Dr. Carich's cell assignments.  Defendants argue that while Plaintiff mentioned the celling conditions in both grievances, the purpose of his grievance was to challenge the disciplinary ticket.  Regarding Defendant Schuler, the Defendants argue that neither grievance names or describes Defendant Schuler.  Thus, the grievances were insufficient to exhaust administrative remedies as to Schuler.

In response, Plaintiff argues that his grievances were sufficient to exhaust his administrative remedies.  Plaintiff concedes that he did not mark the "staff conduct" box on the grievance form, but argues that the basis of his complaints about the disciplinary tickets relate to unsafe cell placement.  Thus, they should be sufficient to exhaust the claims he raised in this lawsuit.  He also argues that on April 8, 2011, he filed a grievance regarding Defendant Carich's cell placement decisions, which he fully exhausted (Doc. 35).[2]

*Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on June 21, 2012.  At the hearing, Defendants argued first, that Defendant Schular was not mentioned in either exhausted grievance.  Thus those grievances, though exhausted, were not sufficient to exhaust administrative remedies as to the claims against him.

Defendants argued second, that although Defendant Carich is named in both grievances, the grievances - which challenged disciplinary actions, not cell placement - were not sufficient to put Defendant Carich on notice of Plaintiff's complaints.  Defendants emphasized that the

---

[2] The Court notes that the action was filed on February 3, 2011, before Bramlett filed the April 8, 2011, grievance. Thus, regardless of its content, the April 8, 2011, grievance could not demonstrate that Plaintiff exhausted his administrative remedies prior to filing suit.

4

purpose of the grievances was to challenge the disciplinary sanctions Plaintiff received for refusing housing. Defendants reasoned that had Plaintiff intended the grievance to alert officials to dangerous celling assignments made by Dr. Carich, that claim would have been at the forefront of the complaints listed in the grievance. Instead, the focus of the grievance was the disciplinary actions taken against him (Doc. 41, p. 10). Defendants emphasized that Plaintiff identified the nature of the grievance on the grievance form as "disciplinary ticket," not "staff conduct" (Doc. 41, p. 9).

In response, Plaintiff stated it was his understanding that both Defendants Schular and Carich would be notified of his complaints as a result of filing the grievance. He stated that he believed the grievance would lead to an investigation of his underlying claims. He further claimed he did not know that he could mark more than one box in the "nature of grievance" section of the form. Plaintiff also argued that he attached several letters to his grievance. The attachments spelled out in detail the actions of Defendant Carich (Doc. 41 p. 22). Regarding the July 10, 2008, grievance, Plaintiff pointed to the following statement: "In short, I was set up to fight Roy Shivers by Dr. Mark Carich. And Roy Shivers has been threatening me and provoking me to fight him since I was forced to move in with him June 4, 2008." Plaintiff argued that this sentence alone was sufficient to put Dr. Carich on notice that he was complaining about the celling arrangements supervised by Dr. Carich.

## CONCLUSIONS OF LAW

*Legal Standards*

The PLRA provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

>other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. ILL. ADMIN. CODE TIT. 20, § 504.810. The grievance officer is required to advise the Chief Administrative Officer (CAO) at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within 2 months of it having been filed. ILL. ADMIN. CODE TIT. 20, § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. ILL. ADMIN. CODE TIT. 20, § 504.850.

Under Illinois regulations, a grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." The Code goes on to state, however, that "this provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." ILL. ADMIN. CODE TIT. 20, § 504.810(b). The Supreme Court has held that exhaustion is not inadequate under the PLRA merely because "an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The Court emphasized that the PLRA does not impose a specific requirement regarding who must be named in a grievance for proper exhaustion. Instead, the level of detail necessary in a grievance for adequate exhaustion should be determined by prison regulations. *Id.* at 218-19. The Court opined that notice to an individual that he might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement," and cited the Fifth Circuit's statement that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). The Seventh Circuit has cautioned district courts to avoid placing too much emphasis on the first sentence of the regulation because "the identification requirement in the first sentence is softened by the second sentence, which clarifies that prisoners need identify names only to the extent practicable." *Glick v. Walker*, 385 F.App'x 579, 582 (7th Cir. 2010).

*Discussion*

At threshold review, the Court allowed Plaintiff to proceed on only his claim for injunctive relief to prevent Defendants Carich and Schular from assigning him to a cell with an inmate who

had threatened him with physical harm (Doc 11. pp. 5-7). The Court dismissed Plaintiff's claims for damages resulting from his cell placement, and his claims regarding the denial of his grievances challenging disciplinary actions taken against him for refusing placement in a cell with either inmate Shivers or Blake. Therefore, the only question currently before the Court is: were Plaintiff's grievances sufficient to exhaust his claim for injunctive relief against Defendants Carich and Schular regarding future cell placement?

### *Defendant Carich*

Defendants argue that the two grievances did not sufficiently address this question because the nature and purpose of the grievances was to challenge the disciplinary actions taken against him, not to seek a change in his cell placement. Defendants acknowledge that Plaintiff's July 10, 2008, grievance states: "In short, I was set up to fight Roy Shivers by Dr. Mark Carich" (Doc. 32-1, p. 7). Defendants argue, however, that this statement is overwhelmed by the rest of the two-page grievance which focused on what happened when the adjustment committee heard his disciplinary ticket for refusing housing. Defendants therefore contend that the grievance was not sufficient to put the prison on notice of his complaints that he faced a threat of harm from the cell assignments made by Dr. Carich.

Plaintiff argues in response that he believed that internal affairs was investigating his allegations that Dr. Carich intentionally placed him in a cell with inmate Shivers so they would fight each other. Thus his grievance centered on the disciplinary action, not the cell placement itself. He argues further that even so, the statements in the grievance regarding Dr. Carich's cell placement were sufficient to alert prison officials to the issue.

Although it is a close call, the Court believes Plaintiff's grievances were sufficient to notify

the prison of an issue with Dr. Carich's cell assignment of SDP inmates. The Seventh Circuit has emphasized that the purpose of a grievance is not to notify specific individuals that they might later be sued, but instead to make prison officials aware of a problem. Plaintiff's grievances do this. Defendants are correct that Plaintiff's grievances do not directly ask that he not to be placed with inmates who threatened him with harm, nor does it ask that Dr. Carich not be allowed to cell him with inmates who have threatened him harm. The grievances do, however, clearly articulate Plaintiff's issue with his cell placement, namely, that he refused placement because the inmates he was placed with had threatened to harm him.

The Court recognizes that the grievance officers and later the ARB viewed the issues raised in the grievances as challenges to the Disciplinary Reports. Whether or not the prison mischaracterized the nature of Plaintiff's grievance is not the issue. After Plaintiff submitted the grievances, he had no control over their interpretation. Based on the Court's reading of the grievances, Plaintiff sufficiently notified prison officials of Defendant Carich's placement of Plaintiff with cellmate who had threatened him harm. This determination is further supported by Plaintiff's statement in the July 10, 2008, grievance that Internal Affairs was already investigating the cell placement issue. If Plaintiff believed the underlying issue was already known to prison officials, it is reasonable that his grievances would have emphasized the immediate disciplinary action he received as a result of the underlying cell-placement issue. Finally, the Court is guided by the fact that Plaintiff is not currently represented by an attorney. His briefs and arguments were all made *pro se*. The Court does not hold the arguments of a non-represented prisoner to the standard of legal professionals. Plaintiff's arguments and the grievances themselves are sufficient to support the Court's conclusion.

*Defendant Schular*

The Court reaches the opposite conclusion regarding Defendant Schular. Plaintiff did not name, describe, or otherwise identify Schular in either grievance. Thus, Plaintiff did not demonstrate that Defendant Schular was in any way responsible for his cell placement. As such, the Court recommends that the two grievances were not sufficient to exhaust administrative remedies as to Defendant Schular.

## CONCLUSION

Therefore, based on all the foregoing, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff did exhaust administrative remedies prior to filing suit against Defendant Carich, but not against Defendant Schular; that the Motion for Summary Judgment filed by Defendants (Doc. 31) be **GRANTED in part and DENIED in part**; that Plaintiff be allowed to proceed on his claim for injunctive relief against Defendant Carich; and that the Court adopt the foregoing findings of fact and conclusions of law.

**DATED: October 18, 2012**

**DONALD G. WILKERSON
United States Magistrate Judge**